UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CHRISTIE NUNAN**,

    Plaintiff,

v.                                                                                                     2:22-cv-770-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

# ORDER

Plaintiff Christie Nunan seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 9),[1] Nunan filed an opening brief (Doc. 15), and the Commissioner responded (Doc. 18). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.**     **Eligibility for Disability Benefits and the Administration's Decision**

    **A.**     **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

On April 13, 2020, Nunan filed an application for disability insurance benefits. (Tr. 323-26). In the application, Nunan asserted an onset date of July 26, 2018, alleging disability due to the following: post-traumatic stress disorder, bipolar disorder, borderline personality disorder, severe anxiety, and depression. (Tr. 91, 103-04, 353). As of the onset date, Nunan was 41 years old with a high-school education. (Tr. 91, 103, 354). Nunan previously worked as an office manager. (Tr.

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

91, 123, 354, 362).

On behalf of the administration, a state agency[5] reviewed and denied Nunan's applications initially on July 16, 2020, and upon reconsideration on February 2, 2021. (Tr. 91-102, 103-126). At Nunan's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on July 13, 2021. (Tr. 62-90). On September 21, 2021, the ALJ issued an unfavorable decision finding Nunan not disabled. (Tr. 130-43). On January 13, 2022, the Appeals Council remanded the case for the ALJ to further consider Nunan's residual functional capacity, further consider whether she had past relevant work and the ability to perform it, and obtain evidence from a vocational expert to clarify the effect of the assessed limitations of Nunan's occupational base. (Tr. 152-54).

The ALJ held a second hearing on July 14, 2022. (Tr. 43-61). On July 28, 2022, the ALJ again issued an unfavorable decision finding Nunan not disabled. (Tr. 17-34). Nunan's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Nunan then brought the matter to this court, and the case is ripe for judicial review.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

## C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop

a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Nunan had not engaged in substantial gainful activity since July 26, 2018, the alleged onset date. (Tr. 20). At step two, the ALJ characterized Nunan's severe impairments as: bipolar I disorder, generalized anxiety disorder, panic disorder, post-traumatic stress disorder, cannabis use disorder, and residuals of back surgeries in 2010 and 2011. (Tr. 20). At step three, the ALJ determined Nunan did not have an impairment or combination of

impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 20-23).

>As a predicate to step four, the ALJ arrived at the following RFC:
>
>[T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except understand, remember, and carry out simple, repetitive tasks; can concentrate, attend, and persist on tasks for two-hour periods and can adapt to occasional changes in the workplace; and can have occasional interaction with the general public, coworkers, and supervisors.

(Tr. 23). Consequently, the ALJ found Nunan was unable to perform her past relevant work. (Tr. 32). At step five, the ALJ found Nunan could perform other work that exists in significant numbers in the national economy. (Tr. 33). In support, a vocational expert testified that three occupations represented the kinds of jobs an individual of Nunan's age, education, work experience, and RFC can perform:

- *Laundry Laborer*, DOT #361.687-018; medium; SVP 2; with 22,000 positions in the national economy;

- *Stores Laborer*, DOT #922.687-058; medium; SVP 2; with 16,000 positions in the national economy; and

- *Salvage Laborer*, DOT #929.687-022; medium; SVP 2; with 35,000 positions in the national economy.

(Tr. 33-34).[6] Thus, for purposes of the Act, the ALJ concluded Nunan was not disabled from July 26, 2018, the onset date, through July 28, 2022, the date of decision. (Tr. 34).

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels.

## II. Analysis

The issue on appeal is whether substantial evidence supports the ALJ's finding that the opinions of Dr. Ivan Mazzorana and APRN Rosa Smith[7] were unpersuasive.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020)

---

Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

[7] Given their post-graduate education and experience, as well as their board certification, advanced practice registered nurses may generally diagnose illnesses, order tests, and prescribe medications.

(quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Substantial evidence supports the ALJ's discount of Dr. Mazzorana and Ms. Smith's opinions.**

At step two of the evaluation, the ALJ found Nunan's bipolar disorder to be severe. And when evaluating a claimant's mental-health limitations, "the ALJ must consider the episodic nature of bipolar disorder." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)). Nunan suggests the ALJ failed to do so by improperly discounting Dr. Mazzorana and Ms. Smith's opinions. But, ultimately, Nunan's appeal asks the court to do exactly what it cannot: reweigh the evidence. *See Buckwalter*, 997 F.3d at 1132. While conceding that evidence in the record

supports the ALJ's finding, Nunan does nothing more than redirect the court to contrary evidence that would support a disability finding. Such an approach will not suffice. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").

Ms. Smith, a treating nurse practitioner, completed an Onset Date Questionnaire/Medical Source Statement. Therein, she opined that Nunan suffers PTSD, bipolar disorder, generalized anxiety disorder, and ADHD that cause several "extreme" and "marked" limitations in work-related functioning. Ms. Smith also believes Nunan would be off-task at least twenty-five percent of the workday and is incapable of tolerating work-stress. (Tr. 722-26).

The ALJ found Ms. Smith's opinions unpersuasive because:

> [T]hey are not supported by the mental status examinations of record and are inconsistent with the claimant's activities of daily living. The mental status examinations have shown claimant was appropriately dressed, and motor activity was unremarkable. Her insight and judgment were described as poor, impaired, and also good. Her mood was depressed, anxious, but also happy and euthymic. Claimant's affect was constricted, blunted, and labile, but was also within normal limits. Her behavior was calm, friendly, engaged, appropriate, cooperative, but irritable at times. Claimant was alert and oriented. Her memory was mildly compromised but was generally intact. Her attention and concentration were described as fair, adequate, good, intact, and within normal limits with only some distractibility. Claimant exhibited unfocused concentration, on occasion, but it was generally found that she was not easily distracted. Claimant was able to follow directions without difficulty and she had adequate concentration. Claimant was able to stay on task and complete tasks. Her thought content was appropriate, and perception

was unremarkable. Claimant's speech was monotone, at times, but speech was also normal. She was negative for psychoses, paranoia, or delusions. Claimant's thought processes were intact, and perception was good. As for the claimant's activities of daily living, she indicated she cares for pets, she travels, she socializes with friends and family, she cares for pets, she tends to her personal care needs, she prepares meals, she performs household chores, she drives and goes out alone, and she goes shopping. Claimant also reported she gets along with authority figures, does artwork, and plants/gardens.

(Tr. 30).

As for Dr. Mazzorana, he completed the same Medical Source Statement. Therein, he similarly opined that Nunan has "marked" and "extreme" limitations in the abilities needed to perform unskilled work. He further determined that Nunan has no ability to perform semiskilled or skilled work, that Nunan is limited in her ability to set realistic goals or make plans independently of others, and that she would be off-task for at least twenty-five percent of the workday. And he determined Nunan is incapable of even low-stress work because she has severe bipolar disorder and has seen many doctors. (Tr. 1167-71). The ALJ found Dr. Mazzorana's opinions unpersuasive for largely the same reasons as Ms. Smith's opinions. (Tr. 31-32).

Nunan argues the ALJ failed to adequately consider these treaters' opinions for two reasons: (1) he did not adequately consider all mental status findings in the record, and (2) the decision overstates Nunan's daily activities. (Doc. 15).

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 404.1520c.

No longer is an ALJ to afford deferential evidentiary weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources" are consistent with the medical opinion presented. 20 C.F.R. § 404.1520c(c)(2). Thus, persuasiveness, rather than weight, is the object at hand when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c).

     As an initial matter, the court notes that each Medical Source Statement relied upon by Nunan are largely check-the-box forms and fill-in questionnaires that contain little to no medical evaluation or analysis supporting the treaters' opinions therein. Even looking beyond these forms to Dr. Mazzorana's and Ms. Smith's treatment notes, there is still no explanation for how they concluded Nunan's impairments translate into their opined limitations. This alone provides a basis for

discounting the opinions of both Ms. Smith and Dr. Mazzorana. *See Kerr v. Comm'r of Soc. Sec.*, No. 2:22-cv-148-SPC-NPM, 2023 WL 2919837, *6-7 (M.D. Fla. Jan. 17, 2023), *report and recommendation adopted*, 2023 WL 2446373 (Mar. 10, 2023) (collecting cases).

Nevertheless, the ALJ also adequately considered all mental status findings in the record. In opposition, Nunan notes that, although many mental status examinations in the record were unremarkable, other treatment notes show her symptoms were more severe. For instance, she explains that while some reports showed her concentration was "good" or "intact," others showed it as "poor," "difficult," "impaired," or "not the greatest." And she also cites other reports of her low energy and motivation as well as her reported depressed and anxious mood. She then concedes that "not every mental status examination was abnormal," but argues the ALJ did not address the evidence that supports her claim. (Doc. 15 at 7-8).

Despite Nunan's viewpoint, the content of the ALJ's decision demonstrates a thorough and comprehensive examination of the evidence pertaining to Nunan's mental health impairments. For instance, consider the following segment of the ALJ's opinion:

> With respect to the claimant's mental health impairments, the evidence shows the claimant was psychiatrically hospitalized on two occasions. However, the evidence also shows that with appropriate treatment, the claimant's symptoms decreased. ... Her insight and judgment were described as poor, impaired, and also good. Her mood was depressed, anxious, but also happy and euthymic. Claimant's affect was constricted, blunted, and labile,

> but was also within normal limits. Her behavior was calm, friendly, engaged, appropriate, cooperative, but irritable at times. Claimant was alert and oriented. Her memory was mildly compromised but was generally intact. ... Claimant exhibited unfocused concentration, on occasion, but it was generally found that she was not easily distracted.

(Tr. 28). The ALJ also repeatedly observed that, at various times during the relevant time period, Nunan appeared anxious and depressed with flat affect, poor or impaired judgment and insight, compromised memory, some distractibility, unfocused concentration, and reported low energy and motivation. This acknowledgment of conflicting record evidence demonstrates the ALJ's recognition of the episodic nature of Nunan's symptoms and his overall consideration of her mental status.

Even if the ALJ was not so thorough, the decision would have likely sufficed. An ALJ need not specifically refer to every piece of evidence in the record so long as it is clear the ALJ considered a claimant's medical condition as a whole in assessing the RFC. *See Sims*, 706 F. App'x at 601; *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (cleaned up)). The ALJ's opinion is far from a "broad rejection" given his consideration of many different medical records supporting his statements. And

although there may be evidence in the record to support Nunan's disability claim, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

Nunan also argues that the ALJ overstated her daily activities. The ALJ found Dr. Mazzorana's and Ms. Smith's opinions unpersuasive because, among other reasons, they were inconsistent with Nunan's activities of daily living. Substantial evidence supports this finding. As recognized by the ALJ, Nunan reported that she cared for her dogs, cleaned the house, did laundry, cooked meals, drove, and went shopping. (Tr. 21-22, 376-78). Nunan's husband confirmed these activities. (Tr. 387-89). Nunan reported to her medical providers on numerous occasions that she cooked and cleaned. (Tr. 686, 689, 692, 719, 763, 807, 810, 846, 1008, 1099, 1965). She repeatedly advised that she traveled to Melbourne to visit friends (Tr. 609, 686, 807) and reported to her medical providers that she socialized with friends and family. (Tr. 1008, 1052, 1062-63, 1089, 1094, 1099). And the medical records are replete with references to Nunan caring for her puppy, shopping, gardening, painting, and doing artwork. (Tr. 718-19, 764, 766, 795, 836, 851, 1008, 1049, 1052, 1062-63, 1066, 1068, 1072, 1089, 1094, 1099).

To counter this evidence, Nunan cites a few places in the record suggesting she lacks the motivation to conduct or complete these activities. (Tr. 52-54, 74-75,

81, 379-80). But, as the ALJ observed, the record also reflects normal or improved motivation levels. (Tr. 609, 780, 783, 786, 789, 795, 798, 810, 813, 836, 838). Regardless, it cannot be said that the ALJ overstated Nunan's activities given the substantial evidence in the record supporting his conclusion. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (noting the ALJ's review "must take into account and evaluate the record as a whole").

Even if the ALJ had improperly evaluated Nunan's daily activities, they were only one factor utilized by the ALJ to discount Dr. Mazzorana's and Ms. Smith's opinions. As noted above, the ALJ also found their opinions were not supported by, and were otherwise inconsistent with, the longitudinal history of treatment, the mental status evaluations, the consultative examiner's opinions, and the treatment records showing improvement of treatment. Indeed, the ALJ noted Dr. Mazzorana's own treatment notes from the two examinations of Nunan indicate that while Nunan was depressed and her affect restricted, "[n]o other notable findings were made." (Tr. 27, 1160). Instead, he found that Nunan's thoughts were organized; her speech, insight, and judgment were normal; and her recall 3/3 after five minutes. (Tr. 1076, 1160-61). Dr. Mazzorana also noted a partial response to Nunan's recent change in medications. (Tr. 1167).

The ALJ also discussed Ms. Smith's treatment notes in the months before she completed the medical source statement, which indicated that Nunan exhibited a

euthymic mood, her thought processes and memory were intact, her insight and judgment were good, and she was focused and able to stay on and complete tasks. (Tr. 25, 687, 690, 693, 783, 1089). This is more than enough to support the ALJ's finding. *See* 20 C.F.R. § 404.1520c(b)(2); *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]").

The ALJ's supportability and consistency findings are supported by substantial evidence. And the ALJ's consideration of both Nunan's good and bad days adequately accounted for the "episodic nature" of Nunan's bipolar disorder. *See Schlink*, 935 F.3d at 1267-68; *Samuels*, 959 F.3d at 1047.[8] Finally, the court must decline Nunan's invitation to reweigh the evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## III.    Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no

---

[8] In *Schlink*, the RFC assigned by the ALJ failed to reflect *any* mental limitations despite evidence demonstrating the claimant's bipolar disorder had more than a minimal effect on the claimant's ability to work. 935 F.3d at 1268. This is not the case here. Nunan's RFC is limited to carrying out only simple, repetitive tasks that require her to concentrate for only two-hour periods. (Tr. 23). For the same reason, it matters not that the ALJ did not explicitly reference Nunan's bipolar disorder to the vocational expert when formulating the hypothetical because he "otherwise implicitly accounted for these limitations." *Samuels*, 959 F.3d at 1047.

error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 22, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge